Melisa A. Rosadini-Knott (SBN 316369)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
Tel: 323-982-4109
E: *mrosadini@peifferwolf.com*

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**IN RE SONY ELECTRONICS PRIVACY LITIGATION**

Case No.: 3:26-cv-00297-H-JAC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SONY ELECTRONICS INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS**

Assigned to the Hon. Marilyn L. Huff

Date: September 21, 2026
Time: 10:30 a.m.
Courtroom: 12A (12th Floor)

NO ORAL ARGUMENT (ECF No. 34)

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. Plaintiffs' claims arise from covert surveillance—not from Sony's repair warranty. ..... 2
B. No Plaintiff was presented with, or agreed to, any arbitration term. ..... 3
C. Sony's evidence: one "current" warranty, one 2025 EULA, and no Plaintiff-specific proof. ..... 3
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 4
A. Sony Fails to Establish The Formation of An Agreement to Arbitrate with Any Plaintiff ..... 4
i. The Wheeler Declaration is Insufficient to Satisfy Sony's Burden Under Any Theory of Contract Formation ..... 4
1) The Court Lacks Necessary Information Regarding the Warranty. ..... 5
2) The Court Lacks Even More Necessary Information Regarding the EULA. ..... 7
ii. *Norcia* Controls: Sony's In-the-Box Warranty Cannot Create an Agreement to Arbitrate in Any Instance ..... 9
1) Plaintiffs did not consent to the purported arbitration agreement in the Limited Warranty. ..... 9
2) The Ninth Circuit has explicitly found that consent cannot be imputed from Plaintiffs' silence or inaction under these circumstances. ..... 11
3) All of Sony's Authority is further overruled or rendered inapplicable by *Norcia*. ..... 12
B. Enforceability Challenges Are For This Court: The Clause Contains No Clear And Unmistakable Delegation. ..... 14
C. The Arbitration Provision Is Invalid Under *McGill*, And By Its Own Terms the Defect Is Not Severable. ..... 16
i. The California Plaintiffs Are Entitled to Public Injunctive Relief. ..... 16

ii. The Arbitration Agreement Waives the Public Injunctive Relief Sought by the California Plaintiffs in Every Forum. .................................17

iii. The Invalid Waiver Cannot Be Severed Because the Warranty's Own Terms Require Invalidating the Entire Arbitration Provision. .....................................................................18

D. In All Events, The Arbitration Provision Is Unconscionable. ............................19

E. Any Plaintiff Compelled To Arbitrate Must Be Stayed—Not Dismissed—While The Remaining Plaintiffs Proceed. ..............................................................22

V. CONCLUSION .....................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahlstrom v. DHI Mortgage Co.*,
21 F.4th 631 (9th Cir. 2021) .......... 2, 4, 24

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012) .......... 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .......... 19, 21, 22

*Barraza v. Cricket Wireless LLC*,
2015 WL 6689396 (N.D. Cal. 2015) .......... 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 7

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 16

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) .......... 18

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 15

*Britt v. Lennar Corp.*,
732 F. Supp. 3d 1220 (E.D. Cal. 2024) .......... 23

*Bui v. Sony Electronics, Inc.*,
No. 22CV399557 (Cal. Super. Ct. Santa Clara Cnty. 2023) .......... *passim*

*Carwile v. Samsung Telecomms. Am., LLC*,
2013 WL 11030374 (C.D. Cal. 2013) .......... 12

*Chavarria v. Ralphs Grocery Co.*,
733 F.3d 916 (9th Cir. 2013) .......... 21

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 4

*Congdon v. Uber Techs., Inc.*,
226 F. Supp. 3d 983 (N.D. Cal. 2016)........................................................23, 24

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)..........................................................................................23

*Douglas v. U.S. Dist. Court*,
495 F.3d 1062 (9th Cir. 2007) ..........................................................................21

*Dye v. Tamko Building Products, Inc.*,
908 F.3d 675 (11th Cir. 2018) ............................................................................7

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019).............................................................15

*Ellis v. Wallet Buddha LLC*,
2025 WL 4061562 (C.D. Cal. 2025) ..................................................................6

*Engalla v. Permanente Med. Grp., Inc.*,
2025 WL 4061562 (C.D. Cal. 2025) ..................................................................6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)...................................................................................*passim*

*Gentry v. Superior Court*,
42 Cal. 4th 443 (2007) ......................................................................................20

*Guerriero v. Sony Elecs. Inc.*,
2022 WL 736428 (S.D.N.Y. 2022) .............................................1, 13, 14, 22

*Han v. Samsung Telecomms. Am., LLC*,
2014 WL 505999 (C.D. Cal. 2014) ..................................................................12

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ..................................................................................7

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024)............................................................................16

*Herron v. Best Buy Stores, L.P.*,
2014 WL 2462973 (E.D. Cal. 2014) .................................................................12

*Herzog v. Superior Court*,
101 Cal. App. 5th 1280 (2024) .......... 11

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 17

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 4, 5

*Krayzman v. Istockphoto LP*,
2024 U.S. Dist. LEXIS 181294 (N.D. Cal. 2024) .......... 8

*Latman v. Burdette*,
366 F.3d 774 (9th Cir. 2004) .......... 5

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) .......... 23

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal. App. 4th 816 (2010) .......... 22

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......... 15, 19, 21

*Maldonado v. Fast Auto Loans, Inc.*,
60 Cal. App. 5th 710 (2021) .......... 17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) .......... 9

*McBurnie v. RAC Acceptance E., LLC*,
95 F.4th 1188 (9th Cir. 2024) .......... 18

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) .......... 2, 16, 17, 18

*Mejia v. DACM Inc.*,
54 Cal. App. 5th 691 (2020) .......... 17

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 23

*Norcia v. Samsung Telecommunications America, LLC*,
845 F.3d 1279 (9th Cir. 2017) .......... *passim*

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) .......... 19, 20

*Perez v. Bath & Body Works, LLC*,
2022 U.S. Dist. LEXIS 15091 (N.D. Cal. 2022) .......... 6

*Ramirez v. Charter Communications, Inc.*,
16 Cal. 5th 478 (2024) .......... 19

*Ramirez v. Trusper, Inc.*,
2024 U.S. Dist. LEXIS 186303 (N.D. Cal. 2024) .......... 8

*Rickes v. Thermo Fisher Sci., Inc.*,
2026 WL 2255243 (9th Cir. 2026) .......... 11

*Rios v. HRB Digital LLC*,
807 F. Supp. 3d 975 (N.D. Cal. 2025) .......... 20

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
232 Cal. App. 4th 836 (2014) .......... 5

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) .......... 9, 13

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2001) .......... 7, 8

*Sheffer v. Samsung Telecomm. Am., LLC*,
2014 WL 506556 (C.D. Cal. 2014) .......... 12

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 2, 22, 23

*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. 2020) .......... 6

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) .......... 21

*Tompkins v. 23andMe, Inc.*,
2014 WL 2903752 (N.D. Cal. 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) .......... 15

*Towns v. W. Creek Fin., Inc.*,
2023 U.S. Dist. LEXIS 202810 (E.D. Cal. 2023) .......... 11

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (1972) .......... 11, 20

*Winfrey v. Kmart Corp.*,
692 F. App'x 356 (9th Cir. 2017) .......... 23

**Statutes**

9 U.S.C. § 3 .......... 22, 23, 24

9 U.S.C. § 4 .......... 7

Cal. Bus. & Prof. Code § 17203 .......... 17

Cal. Civ. Code § 1589 .......... 12

Cal. Civ. Code § 1780(a)(2) .......... 17

# I. INTRODUCTION

Sony asks this Court to hold that twelve consumers—none of whom signed anything, saw anything, or agreed to anything—surrendered their right to a jury the moment a television box entered their homes. The instrument said to accomplish this is a one-page repair warranty, folded into the packaging of televisions that Sony had configured, unbeknownst to any purchaser, to conduct continuous surveillance of everything displayed on their screens. Sony's theory is that each Plaintiff *silently accepted* an arbitration clause buried in that warranty by failing to mail a formal opt-out letter to Sony's legal department within 30 days of purchase—a purchase that, for half of these Plaintiffs, was followed by someone else entirely opening the box.

The Ninth Circuit rejected precisely this theory in *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017). *Norcia* holds that under California law an arbitration provision in an in-box warranty brochure does not bind a consumer as to non-warranty claims: silence and inaction are not acceptance, the presence of an opt-out does not convert inaction into assent, and a document styled as a warranty gives no notice that it imposes freestanding obligations on the buyer. *Id.* at 1284–90. Sony's motion never cites the case.

The motion's other load-bearing elements fare no better. Sony insists that unconscionability and scope questions belong to the arbitrator, citing AAA Commercial Rule R-7. But the state-court ruling Sony submitted with its own motion—the order granting its motion to compel in *Bui v. Sony Electronics, Inc.*, No. 22CV399557 (Cal. Super. Ct. Santa Clara Cnty. Feb. 2, 2023) (the "*Bui* Order," filed as Exhibit A to the Second Durham Declaration, ECF No. 32-2)—squarely **rejected** that delegation argument, holding that this very Sony clause incorporates only subsets of the AAA rules that contain no delegation provision at all. (*Bui* Order at 4–5.) Sony's two prior successes—*Bui* and *Guerriero*—were warranty-claim cases; the *Bui* Order itself distinguished *Norcia* on exactly that ground, and *Guerriero* applied New York's in-the-

box contract rule, which California rejects. Sony's evidence, meanwhile, consists of a single "current" warranty and a February 2025 EULA offered to bind twelve consumers who bought at least ten different television models between 2018 and October 2025—several of whom never touched the box a professional installer opened.

Because Sony cannot carry its burden of proving that any Plaintiff formed an agreement to arbitrate—a question for this Court, not an arbitrator, *Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 634–35 (9th Cir. 2021)—the motion should be denied. If the Court reaches the further questions, the arbitration provision is invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and by the provision's own non-severability terms that defect condemns it entirely; it is also unconscionable. And if the Court were to compel any individual Plaintiff to arbitration, *Smith v. Spizzirri*, 601 U.S. 472 (2024), requires that such Plaintiff's claims be stayed, not dismissed—and the remaining Plaintiffs' claims should proceed in this Court.

## II. <u>FACTUAL BACKGROUND</u>

### A. PLAINTIFFS' CLAIMS ARISE FROM COVERT SURVEILLANCE—NOT FROM SONY'S REPAIR WARRANTY.

Plaintiffs allege that Sony embedded automatic content recognition ("ACR") software in its Smart TVs that captures a digital fingerprint of every image and sound displayed on screen—across streaming applications, cable and broadcast signals, and devices connected by HDMI—every few milliseconds, and transmits that data with persistent household identifiers to Sony, Samba TV, and Google for monetization. (¶¶ 1, 6, 107–27, 329.)[1] The Consolidated Complaint pleads seventeen counts sounding in federal and state privacy statutes (ECPA, VPPA, CIPA, CDAFA), constitutional and common-law privacy, consumer-protection statutes, negligence, and unjust enrichment. (¶ 11.) No count pleads breach of warranty; no Plaintiff seeks repair, replacement, or

[1] Unless otherwise noted, "¶" and "¶¶" citations are to Plaintiffs' Consolidated Class Action Complaint for Public Injunction, Damages, and Declaratory Relief (ECF No. 31).

any benefit under Sony's Limited Warranty. That distinction is dispositive. *See infra* § IV.A.4.

**B. NO PLAINTIFF WAS PRESENTED WITH, OR AGREED TO, ANY ARBITRATION TERM.**

Each of the twelve Plaintiffs alleges that "[a]t no time" was he or she "presented with," nor did any "knowingly agree to, any terms of use, privacy disclosure, or consent mechanism" concerning Sony's data practices. (¶¶ 14, 20, 26, 32, 37, 43, 51, 56, 60, 65, 69, 75.) Six Plaintiffs never assembled, installed, or configured their televisions at all: Ms. Garcia DeBolt's and Ms. Dionne's sets were configured by family members (¶¶ 24, 31); Ms. Castello's, Mr. Carpe's, and Ms. Powell's by professional installers, including Best Buy and Geek Squad personnel (¶¶ 42, 49, 74); and Ms. Semonious's by another member of her household (¶ 69). Further, Mr. Carpe, 77, and Ms. Powell, over 65, are senior citizens who never even handled the packaging of the televisions installed in their homes. (¶¶ 46, 49, 73–74; Carpe Decl. ¶¶ 2, 5; Powell Decl. ¶ 4.)[2]

**C. SONY'S EVIDENCE: ONE "CURRENT" WARRANTY, ONE 2025 EULA, AND NO PLAINTIFF-SPECIFIC PROOF.**

Sony's formation evidence consists of a declaration from David Wheeler, Sony's Vice President of Service—a position he has held only since 2023—attaching (1) "a true and correct copy of the *current* Limited Warranty" (the "Warranty") (Wheeler Decl. ¶ 4 & Ex. A (emphasis added)), and (2) "the *current* End User License Agreement," (the "EULA") bearing the legend "Last Updated: 2025-02" (*id.* ¶ 8 & Ex. B (emphasis added)). Mr. Wheeler asserts—without attaching a single historical version, model-specific insert, packaging record, or purchase record—that "[t]he language of the Arbitration Agreement has not materially changed since at least 2018." (*Id.* ¶ 14.) Plaintiffs purchased at least ten different Sony models between November 2018 and

[2] The declarations of the twelve Plaintiffs are filed herewith. Eleven share identical paragraph numbering; Mr. Carpe's declaration adds a paragraph attesting to his age, so his later paragraphs are offset by one. Citations to "Pl. Decls." refer to the parallel paragraphs of each declaration.

October 2025. (¶¶ 12–78.) As to the EULA, Mr. Wheeler offers only that "[i]n some models, for some years, the EULA is presented at set-up for acceptance," and in others it "is available through the on-screen menu." (Wheeler Decl. ¶¶ 10–11.) Sony identifies no model, no year, and no Plaintiff to whom any EULA was ever presented, much less accepted.

## III. LEGAL STANDARD

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Norcia*, 845 F.3d at 1283 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986)). As the movant, Sony bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence" under ordinary state-law contract principles. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *Norcia*, 845 F.3d at 1283–84. Whether an agreement was formed is always for the court: "parties cannot delegate issues of formation to the arbitrator." *Ahlstrom*, 21 F.4th at 634–35. And no federal policy tips the scale on that question: the "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement," *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006), and the FAA "does not authorize federal courts to invent special, arbitration-preferring procedural rules," *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *accord Norcia*, 845 F.3d at 1291.

## IV. ARGUMENT

### A. SONY FAILS TO ESTABLISH THE FORMATION OF AN AGREEMENT TO ARBITRATE WITH ANY PLAINTIFF

#### i. The Wheeler Declaration is Insufficient to Satisfy Sony's Burden Under Any Theory of Contract Formation

Under California law, the party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence[.]" *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997); *accord Knutson*,

771 F.3d at 565. Here, Sony has failed to meet this burden because the Wheeler Declaration fails to establish the foundational information that would enable the Court to determine whether any agreement was formed between Plaintiffs and Sony. As a result, the Court need not even consider the relief requested by Sony to determine that its Motion must be denied.

1) <u>The Court Lacks Necessary Information Regarding the Warranty</u>.

Formation is decided Plaintiff by Plaintiff, based on the evidence presented by the Defendant. *Knutson*, 771 F.3d at 565. Sony's showing fails at every step.

*First*, a "'witness may testify only about matters on which he or she has first-hand knowledge.'" *Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir. 2004) (quoting Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 602.02 (2d ed. 2004)). Where a declarant "summarily assert[s]" a formation fact but "d[oes] not explain how she arrived at that conclusion," he leaves "a critical gap in the evidence supporting the petition." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843–44 (2014). Here, Mr. Wheeler asserts that "[s]ince at least 2018, each Sony TV sold in the United States has come packaged in a box that contains a hard copy of a Sony limited warranty." (Wheeler Decl. ¶ 3.) Mr. Wheeler describes no document or other authority relied upon for this conclusion, implying as a result that he has first-hand knowledge of every unit of every model of Sony TV packaged anywhere in the country over more than eight years. While Mr. Wheeler is a thirty-year Sony employee, he has held his current position—Vice President, Service—only "since 2023" (*id.* ¶ 1), after seven of the twelve Plaintiffs bought their televisions (¶¶ 12, 17, 29, 35, 47, 54, 68). The declaration does not describe any position he held before 2023, or any role in packaging or distribution at any time. Mr. Wheeler's statements thus cannot be credited because there is no basis in the Wheeler Declaration to conclude that Mr. Wheeler has first-hand knowledge of the facts he attests to, nor does Mr. Wheeler identify any authority that he relied upon

encompassing those facts. *See, e.g., Ellis v. Wallet Buddha LLC,* 2025 WL 4061562, at *3 (C.D. Cal. Dec. 29, 2025) (considering a CEO's factual assertions where he identified relevant records that he relied upon but not where he failed to do so or to otherwise show why he had personal knowledge of the attested business practice).

*Second*, Mr. Wheeler only provides the "current" Warranty, a document which postdates the TV purchases of ten of the twelve Plaintiffs. As a result, Sony effectively asks the Court to enforce written agreements against Plaintiffs while lacking any knowledge of the terms of those agreements. Such a request is obviously untenable. Sony's burden to establish the existence of a valid agreement with each Plaintiff requires it to actually produce those agreements. It cannot succeed without doing so. *See Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *6 (N.D. Cal. Oct. 19, 2020) ("[defendant] would only be able to carry its burden [to show an agreement to arbitrate] if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them"); *Perez v. Bath & Body Works, LLC*, 2022 U.S. Dist. LEXIS 15091, at *2 (N.D. Cal. Jan. 27, 2022) (declining to evaluate an agreement dated two years after plaintiff's purported agreement because "[defendant] can only carry its burden by providing the terms and conditions to which [plaintiff] assented"). Further, to the extent that Sony asks the Court to accept Mr. Wheeler's characterization of prior Warranties in lieu of producing the Warranties themselves, its request violates the best evidence rule and is impermissible as a result. *See* Fed. R. Evid. 1002 (an "original writing . . . is required in order to prove its content").[3]

*Third,* even if the Court credited every word of the Wheeler Declaration, a document sealed in a box that a Best Buy installer, a Geek Squad technician, a husband, or another household member opened and discarded could not put the purchaser on

[3] Plaintiffs preserve their objections to the Wheeler Declaration: paragraph 7 offers a legal conclusion about the formation and validity of the asserted agreement; paragraphs 15–16 describe opt-out records that Sony has not produced, *see* Fed. R. Evid. 1002, 1006, and relate hearsay; and Exhibit A is not authenticated as a document any Plaintiff ever received.

notice of anything. (*See* ¶¶ 24, 31, 42, 49, 69, 74.) As explained below, the Ninth Circuit has rejected in-box formation for the consumer who is handed the box. *See* § IV.A.ii, *infra*. Sony's theory would bind consumers who never even saw the box at all. Sony's footnoted answer—*Dye v. Tamko Building Products, Inc.*, 908 F.3d 675, 678–80, 683–84 (11th Cir. 2018) (MTC n.6), where homeowners were bound by arbitration terms printed on the outside of every shingle wrapper their roofers opened—is no answer under California law. *Dye* applied Florida's objective-assent rule to conspicuous terms facing the installer; *Norcia* holds that California law does not bind even the purchaser who receives the box, and Sony offers no evidence that any installer was any Plaintiff's agent for contract formation. At an absolute minimum, this record presents genuine disputes of material fact on formation, and the FAA's answer to a genuine formation dispute is not a grant on the movant's say-so—it is denial of the motion or a trial under 9 U.S.C. § 4. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670–71 (9th Cir. 2021).

2) <u>The Court Lacks Even More Necessary Information Regarding the EULA</u>.

The Wheeler Declaration is even more deficient when applied to Plaintiffs' supposed agreement to Sony's EULA. An Internet agreement such as the EULA binds only where there is "reasonably conspicuous notice of the terms to which the consumer will be bound" and the consumer "takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2001). "[U]sers are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857.

Sony provides no evidence whatsoever to show that its presentment of the EULA to Plaintiffs satisfied this high standard. It offers no screenshots showing the set-up

process for Plaintiffs' TVs, no device records establishing that Plaintiffs consented to the EULA through their TV interfaces—nothing at all to explain how the EULA was presented or how Plaintiffs' assent to it was obtained. On the contrary, the Wheeler Declaration does not even state definitively that Plaintiffs ***did*** in fact accept the EULA but rather represents only that "[i]n some models, for some years," a EULA is presented for acceptance. (Wheeler Decl. ¶ 10.) Yet, Sony does not identify which models, which years, or which Plaintiffs, despite Plaintiffs including their TV model numbers in the Consolidated Complaint. (¶¶ 24, 31, 42, 49, 69, 74.)[4] Additionally, as if these myriad deficiencies were not enough, Sony also fails to establish Plaintiffs' agreement to the EULA for all of the same reasons that it fails to show their assent to the Warranty: Sony provides only one version of the EULA dated to 2025—well after the majority of Plaintiffs purchased their TVs; Mr. Wheeler gives no basis supporting his personal knowledge of the process by which Plaintiffs' TVs obtain user consent (if at all); and Mr. Wheeler does not explain how the six Plaintiffs who did not personally set up their TV could have had notice of the EULA in any instance.

As a result of Sony's utter failure to meet its evidentiary burden, any consideration of the EULA is impossible. The Court simply cannot evaluate the formation and applicability of a purported agreement when it does not know how the agreement was presented to Plaintiffs, how Plaintiffs purportedly signaled their assent, what terms were

[4] To the extent that Sony argues that inclusion of a reference to the EULA in the Warranty establishes Plaintiffs' consent to the EULA, its argument is without merit. *See* MTC at 3, n. 4. As California law requires conspicuous notice of electronic agreements, courts uniformly decline to apply the incorporation by reference doctrine to online agreements, even where a document is referenced and referred to by a direct hyperlink within a document for which the user had adequate notice. *See Ramirez v. Trusper, Inc.*, 2024 U.S. Dist. LEXIS 186303, at *15–16 (N.D. Cal. Oct. 11, 2024) (collecting cases involving electronic agreements showing that "[c]ourts commonly reject[] agreements . . . where a multi-step process is required . . . to view the agreement at issue"); *Krayzman v. Istockphoto LP*, 2024 U.S. Dist. LEXIS 181294, at *1–2 (N.D. Cal. Oct. 3, 2024) (where plaintiff received notice of a Terms of Service agreement, terms in a License Agreement hyperlinked to and incorporated by reference in the terms of service were unenforceable); *Sellers*, 289 Cal. Rptr. 3d at 31 (where plaintiff agreed to Terms of Service agreement, arbitration clause hyperlinked to and incorporated by reference by the Terms of Service agreement was not enforceable).

present in the operative Warranties when Plaintiffs purchased their TVs, nor even if the agreements were ever actually presented to Plaintiffs at all.[5] The Court should thus ignore Sony's arguments relating to the EULA altogether. Indeed, it has little other choice considering the dearth of information available to it.

In sum, Sony was required to provide the Court with the facts necessary to evaluate the agreements that it seeks to enforce. It did not do so. As a result, its Motion fails at the threshold.

#### ii. *Norcia* Controls: Sony's In-the-Box Warranty Cannot Create an Agreement to Arbitrate in Any Instance

1) <u>Plaintiffs did not consent to the purported arbitration agreement in the Limited Warranty</u>.

Even if the facts set forth in the Wheeler Declaration were properly supported, the Motion would still fail because Sony would nonetheless be unable to show Plaintiffs' consent to its "in-the-box" arbitration agreement. Generally, "silence or inaction does not constitute acceptance of an offer" under California law, and an offer "cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent." *Norcia*, 845 F.3d at 1284–85 (quoting *Leslie v. Brown Bros.*, 208 Cal. 606, 621 (1929)). Nor will a customer be "bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 1285 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972)); *accord Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001). In *Norcia v. Samsung Telecommunications America, LLC*, the Ninth Circuit applied these principles to resolve ongoing intra-circuit discord as to the

[5] Far from helping it, Sony's authority supports this point: in each case it cites discussing electronic contract formation, the movant proved—with screenshots, click records, or device logs—that a specific enrollment, account-creation, or setup flow was actually presented to and accepted by the plaintiff. *See, e.g., In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018). Sony not only fails to provide such affirmative evidence, it fails to even state definitively that Plaintiffs' TVs were actually configured to solicit consent to the EULA in the first place.

enforceability of "in-the-box" consumer agreements like Sony's Warranty, ultimately finding that in the absence of any "'outward manifestations of consent [that] would lead a reasonable person to believe the offeree has assented to the agreement,'" an in-the-box agreement does not contractually bind the consumer to its terms. 845 F.3d at 1286. This controlling authority mandates the same result here.

In *Norcia*, Samsung moved to compel arbitration of the plaintiff's consumer-fraud claims pursuant to an arbitration provision "contained in a warranty brochure included in the Galaxy S4 [mobile phone] box." 845 F.3d at 1281. Like Sony's Warranty, Samsung's warranty required arbitration of all disputes arising from "the sale, condition or performance of the products," and permitted the consumer to opt out within 30 days of purchase. *Id.* at 1282. And like Plaintiffs here, the *Norcia* plaintiff took no action to either signal acceptance of the arbitration agreement or to opt out of it. *Id*. Based on these facts, the Ninth Circuit "conclude[d] that Samsung's inclusion of a brochure in the Galaxy S4 box, and Norcia's failure to opt out, does not make the arbitration provision enforceable against Norcia." *Id*. at 1290.

Every element of *Norcia*'s holding maps cleanly onto the present case. Sony's in-the-box contract is also a "Limited Warranty" and includes an arbitration agreement with the same scope as the Samsung warranty considered in *Norcia*. *Compare id.* at 1282, *with* (Wheeler Decl., Ex. A.) Consequently, just as in *Norcia*, a "reasonable person in [Plaintiffs'] position would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty," nor would he "understand that receiving the seller's warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent." 845 F.3d at 1289–90.[6] Moreover, no Plaintiff signed

[6] *See also Herzog v. Superior Court*, 101 Cal. App. 5th 1280, 1297 (2024) (finding that a reasonable consumer would not expect that by agreeing to the defendant's data use policies they were also agreeing to arbitrate any and all disputes with the defendant, even where wholly unrelated to data privacy); *Towns v. W. Creek Fin., Inc.*, 2023 U.S. Dist. LEXIS 202810, at *19 (E.D. Cal. Nov. 9, 2023) (finding that a consumer would not reasonably expect a purchase confirmation e-mail from a mattress store to include an agreement to arbitrate disputes with a third-party financing company).

any agreement with Sony, nor were even presented with any terms. (¶¶ 14, 20, 26, 32, 37, 43, 51, 56, 60, 65, 69, 75.) Sony offers no evidence that any Plaintiff so much as opened the box—indeed, for six of them, someone else did. Further, Plaintiffs all attest under penalty of perjury that they do not recall ever seeing the Warranty. (Pl. Decls. ¶ 6; Carpe Decl. ¶ 7.) And Sony's notice-by-receipt theory assumes a document whose contractual character is apparent on receipt—the premise *Norcia* and *Windsor Mills* reject for a document labeled "Limited Warranty"—and it has no starting point at all for the six Plaintiffs who never received the document. Ninth Circuit law therefore requires that Sony's Motion be denied. *See Norcia*, 845 F.3d at 1289–90; *Rickes v. Thermo Fisher Sci., Inc.*, 2026 WL 2255243, at *1 (9th Cir. Aug. 5, 2026) (mem.) (declining to compel arbitration where defendant failed to show that plaintiff ever viewed, interacted with or assented to the arbitration agreement because silence alone does not constitute assent).

2) <u>The Ninth Circuit has explicitly found that consent cannot be imputed from Plaintiffs' silence or inaction under these circumstances</u>.

While Sony may argue on reply that California law recognizes narrow exceptions to the general rule that silence cannot manifest assent, none of those exceptions apply here.

*First*, silence may imply acceptance where the consumer has signed an acknowledgment manifesting "his intent to use his silence, or failure to opt out, as a means of accepting." *Norcia*, 845 F.3d at 1285 (quoting *Gentry v. Superior Court*, 42 Cal. 4th 443, 468 (2007)). This exception is obviously irrelevant here; Sony does not assert that Plaintiffs ever signed any such document (nor any document at all).

*Second*, although "voluntary acceptance of the benefit of a transaction" can impute "consent to all the obligations arising from it[,]" Plaintiffs accepted no such benefit here. Cal. Civ. Code § 1589. The Warranty informs consumers that "[o]pting out of this dispute resolution will not affect the coverage of the Limited Warranty in any

way, and You will continue to enjoy the benefits of the Limited Warranty." Wheeler Decl. Ex. A. The Ninth Circuit considered identical opt-out language in *Norcia* and concluded that § 1589 was inapplicable because the plaintiff was "entitled to 'the benefits of the Limited Warranty' regardless [of] whether [he] opted out of the arbitration agreement." *Norcia*, 845 F.3d at 1286 (examining representation in Limited Warranted that opting out "will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty"). The same reasoning applies with equal force here.

3) <u>All of Sony's Authority is further overruled or rendered inapplicable by *Norcia*.</u>

As shown above, it is no wonder that Sony fails to even mention *Norcia* in its Motion. *See generally*, MTC. *Norcia* unambiguously forecloses upon every argument propounded in the Motion, and negates the primary authority upon which Sony relies. The rest of its authority fares no better.

*First*, Sony cites a number of district court cases finding in-the-box arbitration agreements enforceable decided ***prior*** to *Norcia*. *See Herron v. Best Buy Stores, L.P.*, 2014 WL 2462973 (E.D. Cal. June 2, 2014); *Sheffer v. Samsung Telecomm. Am., LLC*, 2014 WL 506556 (C.D. Cal. Jan. 30, 2014); *Han v. Samsung Telecomms. Am., LLC*, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014); *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374 (C.D. Cal. July 9, 2013). These cases have no persuasive force as all have been overruled by *Norcia*'s contrary holding. *See generally Norcia*, 845 F.3d 1279; *see also Barraza v. Cricket Wireless LLC*, 2015 WL 6689396, at *5 (N.D. Cal. Nov. 3, 2015) (noting intra-circuit split in Ninth Circuit prior to *Norcia* as to enforceability of in-the-box agreements).

*Second*, the one post-*Norcia* California federal decision Sony offers—*In re Samsung Galaxy Smartphone Marketing & Sales Practices Litigation*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018) (cited at Mot. 9, 10)—defeats its own argument. The court there denied arbitration as to the plaintiffs whose in-box materials were "insufficient to put a

reasonable consumer on notice of the arbitration provision or the contractual nature of the purchase-and-usage transaction." *Id.* at 1298–99. It compelled arbitration only where the box or guidebook cover "unequivocally alerts the consumer to the presence of terms and the conduct required to assent to those terms"—distinguishing *Norcia* because the warranty brochure's cover there "did not go beyond mentioning warranties." *Id.* at 1299–1300. Sony's record sits on the denied side of that line: no evidence of any box exterior, a document titled "Limited Warranty" that does not go beyond mentioning warranties, and no term anywhere keying acceptance to use of the television.

*Third*, Sony presents cases where an arbitration agreement included in a warranty was enforced against a plaintiff bringing warranty claims. *See* (*Bui* Order); *Guerriero v. Sony Elecs. Inc*., 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022). *Norcia* bars application of these cases to the instant facts as well. In *Norcia*, the Ninth Circuit explained that "a warranty generally does not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises." 845 F.3d at 1288. Thus, while Samsung "may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty contained in the Product Safety & Warranty Information brochure," the court had no occasion to decide the question "because Norcia has not brought any warranty claims against Samsung." *Id*. at 1288 n.3. In contrast, *Bui* **did** involve warranty claims. (*See Bui* Order.) The *Bui* court compelled arbitration of that warranty claim on estoppel grounds, finding that because the plaintiff had brought a claim "which relies on contract terms" of the defendant's warranty, he "may be equitably estopped from repudiating the arbitration clause contained in that agreement." (*Id*. at 7) (quoting *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239 (2011)). In reaching this conclusion, *Bui* explicitly distinguished *Norcia*, noting that unlike the warranty claims alleged by the *Bui* plaintiff, arbitration was not appropriate in *Norcia* because the plaintiff "alleged misrepresentations independent of the warranty". (*Id*. at 7–8.) Here, the same distinction that Sony relied upon in *Bui* precludes arbitration for the same reasons argued by Sony

in *Bui*. Plaintiffs here bring no warranty claims, seek no warranty benefits, and plead no reliance on the warranty—as a result, *Norcia*, not *Bui*, supplies the rule.[7]

The instant case is identical to *Norcia* in every relevant regard. The Court is therefore compelled by controlling Ninth Circuit precedent to deny Sony's Motion. And because no agreement was formed, the Court has no occasion to reach Sony's scope argument (Mot. § IV.A.3); *Norcia*'s footnote 3 confirms that an arbitration clause housed in a warranty would, at most, reach warranty disputes—and no count here pleads one.

### B. ENFORCEABILITY CHALLENGES ARE FOR THIS COURT: THE CLAUSE CONTAINS NO CLEAR AND UNMISTAKABLE DELEGATION.

Sony asks the Court to send unconscionability and scope questions to the arbitrator because "the AAA rules" are incorporated. (Mot. § IV.A.2–3.) Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Sony's clause does not incorporate "the AAA rules" wholesale: it provides that arbitration "will be administered in keeping with the Expedited Procedures of the Commercial Arbitration Rules and the Supplementary Proceedings for Consumer-Related Disputes." (Wheeler Decl. Ex. A.) The *Bui* Order construed this exact language and held that the clause "incorporates a subset of the Commercial Arbitration Rules, namely the Expedited Procedures, and the Supplementary Proceedings for Consumer-Related disputes, neither of which include the delegation provision cited by Defendant," and that "[t]hus, the referenced rules do not constitute clear and unmistakable evidence that arbitrability issues were delegated to the arbitrator." (*Bui* Order at 4.) Sony's

[7] *Guerriero* is even further afield. In addition to involving a claim stemming from a defective camera shutter—a product-performance dispute at the core of a repair warranty—*Guerriero* also applied New York law, under which in-the-box agreements are generally enforceable. *See* 0222 WL 736428, at *7 (S.D.N.Y. Mar. 11, 2022). As set forth above, the same is obviously not true under California law. *See Norcia*, 845 F.3d at 1290.

motion—which attaches the *Bui* Order and cites it favorably elsewhere—nowhere acknowledges that the same order decided this question against it. Sony's supporting declaration only deepens the problem: its counsel swears in successive paragraphs that the clause "incorporates" the AAA Commercial Rules (Second Durham Decl. ¶ 4) and that it "incorporates" the AAA Consumer Rules (*id.* ¶ 5)—mutually inconsistent legal conclusions, each refuted by the clause's own text and by the Bui Order attached to that same declaration.

Moreover, even assuming *arguendo* that the arbitration agreement did incorporate the full Commercial Rules, the result is the same. Merely referencing AAA rules in a consumer contract is not clear-and-unmistakable evidence that an unsophisticated party agreed to delegate arbitrability. *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *12 (N.D. Cal. June 25, 2014) (following *Ajamian*), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal. 2019); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031–32 (N.D. Cal. 2022). The rationale is at its zenith here: for consumers said to be bound by a pamphlet in a television box, there is a "slim likelihood that the parties actually contemplated who would determine threshold enforceability issues." *Ajamian*, 203 Cal. App. 4th at 790 (quoted in *Bui* Order at 5). Sony's own authority agrees: *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), grounded its AAA-incorporation holding in the parties' *sophistication* and expressly declined to decide whether the rule extends to consumer contracts. And Sony's footnote citation to the 2025 Consumer Arbitration Rules only underscores the defect: a rule set revised in 2025 cannot supply clear and unmistakable evidence of what a consumer supposedly agreed to in 2018—and the warranty's text names the Commercial Rules' Expedited Procedures, not the Consumer Rules at all.

To be precise about the object of these challenges, as *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008–10 (9th Cir. 2023), requires: Plaintiffs' arguments in this section are

directed at the asserted delegation itself—no delegation provision was ever formed as to any Plaintiff (*supra* § IV.A), none is clearly and unmistakably stated, and any that could be found would be unconscionable for the same reasons as the clause that contains it—a buried, unseen, non-negotiable term in a document no Plaintiff ever encountered. A delegation clause that fails those tests is unenforceable even if delegation were otherwise clear. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 676 (9th Cir. 2024) (affirming denial; delegation clause itself unconscionable).

### C. THE ARBITRATION PROVISION IS INVALID UNDER *MCGILL*, AND BY ITS OWN TERMS THE DEFECT IS NOT SEVERABLE.

California law gives consumers a statutory right to seek injunctive relief that protects the public at large, and it voids any contract that waives that right in every forum. *McGill*, 2 Cal. 5th at 961–62. As explained below, California Plaintiffs' claims carry an inherent right to public injunctive relief that Sony's Warranty and EULA purport to waive in every conceivable forum. Moreover, the very agreement that Sony drafted precludes the Court from curing this defect through severance. As a result, the public injunctive relief waiver not only fails, it takes the entire arbitration provision down with it.

#### i. The California Plaintiffs Are Entitled to Public Injunctive Relief.

Public injunctive relief "remains a remedy available to private plaintiffs under the UCL and the false advertising law, as well as under the CLRA"—the very statutes the California Plaintiffs invoke: the UCL, Cal. Bus. & Prof. Code § 17203 (Count XI), and the CLRA, Cal. Civ. Code § 1780(a)(2) (Count XII). *McGill*, 2 Cal. 5th at 961. Injunctive relief is likewise the traditional remedy for ongoing violations of the California Constitution's privacy guarantee (Count III), and Count XVII expressly seeks "Public Injunctive Relief on Behalf of the General Public" under California law. The relief these counts demand is concrete and prohibitory: an order halting Sony's undisclosed, ongoing interception and sale of in-home viewing data, and requiring truthful point-of-

sale disclosure of the ACR surveillance embedded in every Sony television offered to the California public. (¶¶ 8, 11, 79, 170–80; Count XVII.)

Such relief is "public injunctive relief" under the Ninth Circuit's definition: relief with the "primary purpose and effect" of "prohibiting unlawful acts that threaten future injury to the general public." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). The injunction Plaintiffs seek does not administer relief to a closed class of existing customers; it stops deceptive conduct aimed at the *buying public*—the millions of future Sony TV purchasers, strangers to this litigation with no existing relationship to Sony, who will otherwise carry undisclosed surveillance devices into their homes. Plaintiffs, who now know the truth, would benefit only incidentally, as members of the public. California law requires no more: enjoining a defendant's ongoing deceptive practices toward future consumers prototypically constitutes public injunctive relief even where class members may benefit as members of the class. *Mejia v. DACM Inc.*, 54 Cal. App. 5th 691, 696–97 (2020); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 716–19 (2021). *Hodges* itself distinguished exactly this posture: the claims there sought relief for "a discrete subset of similarly situated persons"—existing cable subscribers—whereas forward-looking relief that "by and large" benefits the general public qualifies. 21 F.4th at 542–49. Point-of-sale disclosure obligations owed to everyone who walks into a Best Buy are on the public side of that line.

**ii. The Arbitration Agreement Waives the Public Injunctive Relief Sought by the California Plaintiffs in Every Forum.**

The warranty commands that "ANY DISPUTE RESOLUTION PROCEEDING WILL ONLY CONSIDER YOUR INDIVIDUAL CLAIMS," and forbids any "PRIVATE ATTORNEY GENERAL ACTION"; the EULA adds that the arbitrator "may award declaratory or injunctive relief only in favor of the party seeking relief, and only to the extent necessary to provide relief warranted by that party's individual claim." (Wheeler Decl. Exs. A–B.) In other words, the courthouse door is closed by the arbitration requirement; the arbitral door is closed by the individual-relief cap. A

contract that "purport[s] to waive" the statutory right to seek public injunctive relief in any forum is "invalid and unenforceable under California law." *McGill*, 2 Cal. 5th at 961–62. The FAA does not preempt that rule, *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 830–31 (9th Cir. 2019), and the McGill question is for this Court—not an arbitrator—to decide, *McBurnie v. RAC Acceptance E., LLC*, 95 F.4th 1188, 1190–91 (9th Cir. 2024).

**iii. The Invalid Waiver Cannot Be Severed Because the Warranty's Own Terms Require Invalidating the Entire Arbitration Provision.**

Sony's severability clause preserves the remainder of the arbitration provision only as to terms "other than waivers of class action rights": "If any part of this arbitration provision, *other than waivers of class action rights*, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable." (Wheeler Decl. Ex. A (emphasis added).) Sony thus drafted a poison pill, such that the representative-action waiver—which contains the individual-claims-only requirement—is expressly excluded from severance. As a result, when the representative-action waiver fails under *McGill*, the arbitration provision fails with it. Courts hold drafters to nonseverability terms of their own making. In *Securitas Security Services USA, Inc. v. Superior Court*, the drafter's agreement made its representative-action waiver nonseverable; once that waiver failed, the agreement presented an "all-or-nothing proposition"—the entire arbitration agreement was unenforceable and "the parties must resolve their disputes in superior court." 234 Cal. App. 4th 1109, 1126 (2015). *Kec v. Superior Court* is of a piece: a drafter may not "selectively enforce" arbitration by severing an invalid representative waiver its own contract made nonseverable; instead, "the entire dispute must remain in court." 51 Cal. App. 5th 972, 980–81 (2020). And in *MacClelland*, Verizon's agreement contained this same carve-out—every invalid term was severable "except for the prohibition on class arbitrations"—and the court held the arbitration agreement unenforceable in its entirety rather than sever it. 609 F. Supp. 3d at 1044–46.

The Court should hold the arbitration provision unenforceable as to the California Plaintiffs on this independent ground.

### D. IN ALL EVENTS, THE ARBITRATION PROVISION IS UNCONSCIONABLE.

Should the Court reach enforceability, the arbitration provision fails California's familiar sliding-scale test: unconscionability requires both a procedural and a substantive element, "the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results," evaluated in inverse proportion—"the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required," and vice versa. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *accord Ramirez v. Charter Communications, Inc.*, 16 Cal. 5th 478, 493 (2024) (reaffirming framework). Where the circumstances of formation involve a high degree of oppression or surprise, even moderate substantive one-sidedness condemns the term.[8] *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–26 (2019).

**Procedural unconscionability is at its apex.** This is a contract of adhesion in its purest form: pre-printed terms drafted by Sony, presented to no one, negotiable by no one, delivered—if at all—sealed inside a box after purchase, in fine print, in a document labeled "Limited Warranty" whose "contractual nature is not obvious." *Windsor Mills*, 25 Cal. App. 3d at 993. Surprise could hardly be greater: the Complaint alleges, and the declarations confirm, that no Plaintiff ever saw the provision at all. (¶¶ 14–75; Pl. Decls. ¶¶ 5–6; Carpe Decl. ¶¶ 6–7.) The 30-day opt-out does not cure the oppression—it compounds it. The window runs from the *date of purchase*, not delivery, unboxing, or first use (Wheeler Decl. Ex. A), so for the six Plaintiffs whose televisions were unboxed and configured by installers or family members, the clock ran—and in some cases

[8] The EULA selects Delaware law. (Wheeler Decl. Ex. B.) Sony nonetheless briefs formation, delegation, and enforceability under California law throughout its motion, and has therefore forfeited any argument that another state's law governs these questions.

expired—before they ever handled the television or could have encountered the document containing the opt-out instructions. (Pl. Decls. ¶ 7; Carpe Decl. ¶ 8.) An escape hatch a consumer cannot know exists is no escape hatch: an opt-out provision does not preclude a finding of procedural unconscionability where the consumer had no meaningful notice of the terms—a holding rendered just months ago in an online-privacy case. *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 984–86 (N.D. Cal. 2025) (motion denied; tax-platform arbitration provision procedurally unconscionable notwithstanding opt-out); *see also Gentry*, 42 Cal. 4th at 470–72; *OTO*, 8 Cal. 5th at 126–28.

**The substantive terms are one-sided in Sony's favor.** *First*, the scheme lacks the "modicum of bilaterality" California requires: the EULA channels consumers' claims to individual arbitration while carving Sony's own likeliest claims—those "enforcing, protecting, or concerning the validity of intellectual property rights"—out of the mandatory pre-arbitration negotiation process. (Wheeler Decl. Ex. B.) "enforcing, protecting, or concerning the validity of intellectual property rights"—out of the mandatory pre-arbitration negotiation process. (Wheeler Decl. Ex. B.) The carve-out is facially mutual—either side may skip negotiation for such claims—but its only realistic beneficiary is the drafter: consumers hold no intellectual-property claims against Sony. A facially even exception that in practice spares only the drafter's claims is one-sided in effect. *See Armendariz*, 24 Cal. 4th at 117–19.

*Second*, the EULA extracts the consumer's advance consent that any violation "will cause irreparable harm to SONY" entitling Sony to injunctive relief, while capping the consumer's own arbitral remedies at relief "warranted by that party's individual claim." (*Id*. Ex. B.) The result is a one-way street: Sony wrote itself pre-approved access to court-ordered injunctions, while the consumer it forces into arbitration can never obtain an injunction protecting anyone but herself.

*Third*, Sony "RESERVES THE RIGHT TO AMEND ANY OF THE TERMS OF THIS EULA AT ITS SOLE DISCRETION BY POSTING NOTICE ON A SONY

DESIGNATED WEB SITE" (*id.*), a unilateral-modification power that renders the consumer's obligations fixed and Sony's illusory—and that binds no one in any event, because posting revised terms to a website imposes no duty on consumers to notice them. *Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1066 (9th Cir. 2007) (per curiam). The EULA's own cure confirms the defect rather than removes it: under the heading "REJECTING CHANGES MADE TO THE DISPUTE PROCEDURES," a consumer may escape an amendment only by mailing a letter within 30 days of the posted change—the same illusory escape hatch as the original opt-out, with a deadline that runs from an event invisible to the consumer. (Wheeler Decl. Ex. B.)

*Fourth*, the agreement designates Sony's "third-party suppliers" as express beneficiaries entitled to enforce it—while no one stands behind the consumer. (*Id.*) *Compare MacClelland*, 609 F. Supp. 3d at 1033–46 (cataloguing materially similar one-sided terms—including a public-injunctive-relief waiver—as substantively unconscionable); *Ting v. AT&T*, 319 F.3d 1126, 1147–50 (9th Cir. 2003) (remedies limitations in consumer services agreement unconscionable); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 919–26 (9th Cir. 2013) (terms systematically favoring the drafter). Combined with procedural surprise of this magnitude, these terms render the provision unenforceable.

Further, while courts occasionally employ judicial reconstruction to render an arbitration agreement conscionable, this remedy is inappropriate if "the agreement is 'permeated' by unconscionability." *Lhotka v. Geographic Expeditions, Inc.,* 181 Cal. App. 4th 816, 825 (2010) (citations omitted). "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124). "[I]n the case of the agreement's lack of mutuality, such permeation is indicated by the fact that

there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz,* 24 Cal. 4th at 124–25. As shown above, there is far more than one unconscionable provision in Sony's arbitration agreement. Moreover, because Sony's own drafting forbids severing the representative-action waiver, the Court cannot excise every unconscionable element in the agreement—it may only decline to enforce the agreement altogether

**E. ANY PLAINTIFF COMPELLED TO ARBITRATE MUST BE STAYED—NOT DISMISSED—WHILE THE REMAINING PLAINTIFFS PROCEED.**

Sony asks the Court to "dismiss SEL from this action." (Mot. at 15.) The Supreme Court has foreclosed that request: when a court finds claims arbitrable and a party requests a stay, "§ 3 compels the court to issue a stay, and the court lacks discretion to dismiss the suit." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). Plaintiffs request a stay of any compelled claims in the alternative. Even the authorities Sony relies on honored this rule: *Guerriero* stayed the action, 2022 WL 736428, at *4, and the *Bui* Order compelled only the individual claim while staying the class claims (*Bui* Order at 9).

Any stay under § 3, however, is claim-specific. The statute directs a stay only of proceedings on issues that are themselves referable to arbitration; as to everything else, a movant is "not entitled to a stay as a matter of right under the provisions of the Arbitration Act," and the question is committed to the Court's discretion. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 860–61 (9th Cir. 1979); *accord Winfrey v. Kmart Corp.*, 692 F. App'x 356 (9th Cir. 2017) (mem.). *Spizzirri* addressed only the arbitrable side of that line—what a court must do with claims it actually sends to arbitration—and the treatment of non-arbitrable claims remains a matter of discretion. *See Britt v. Lennar Corp.*, 732 F. Supp. 3d 1220, 1237 (E.D. Cal. 2024) (holding a stay of the non-arbitrable claims "to be within its discretion," and noting that certiorari in *Spizzirri* had been granted on a different issue).

That discretion should be exercised against a broader stay here, for a simple reason: no Plaintiff's claims depend on any other Plaintiff's. Each Plaintiff's claims stand on Sony's conduct toward that Plaintiff, and nothing an arbitrator might conclude about whether one Plaintiff formed an agreement with Sony would bind this Court or resolve anything as to the others—"regardless of the outcome of the arbitration," the non-compelled Plaintiffs' claims "will need to be litigated in this court." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990–91 (N.D. Cal. 2016). A stay of their claims would therefore delay everything and resolve nothing. The FAA accepts that division of labor: it "requires piecemeal resolution when necessary to give effect to an arbitration agreement," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983), "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Courts in this circuit accordingly allow non-compelled plaintiffs to litigate while compelled plaintiffs arbitrate. In *Congdon*, plaintiffs who had opted out of Uber's arbitration agreement proceeded in court while their co-plaintiffs arbitrated. 226 F. Supp. 3d at 990–91. In *Avery v. TEKsystems, Inc.*, the claims of 417 class members with no arbitration agreements proceeded even while the arbitrability of others' claims was on interlocutory appeal. 757 F. Supp. 3d 973 (N.D. Cal. 2024). And *Congdon* supplies the answer to any request by Sony to hold the remaining Plaintiffs' claims in abeyance: a defendant "cannot, on the one hand, argue that the parties intended individualized adjudication of each plaintiff's claims, and in the same breath, argue that certain individual[s'] actions should be impacted by parallel litigation." *Id.* at 991.

## V. CONCLUSION

Sony configured its televisions to watch the people watching them, told no one, and now insists that everyone agreed to arbitrate about it. No Plaintiff formed any agreement with Sony—under *Norcia*, silence in the face of a pamphlet is not assent; under *Ahlstrom*, that question belongs to this Court; and under the order Sony itself

attached to its motion, nothing was delegated to an arbitrator. The motion should be denied in its entirety. In the alternative, the Court should deny the motion as to every Plaintiff for whom Sony has not carried its evidentiary burden; and if any individual Plaintiff is compelled to arbitrate, that Plaintiff's claims should be stayed pursuant to 9 U.S.C. § 3—not dismissed—while the remaining Plaintiffs' claims proceed before this Court.

Dated: September 4, 2026

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By: *<u>/s/ Sonjay C. Singh</u>*
Sonjay C. Singh*
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: *ssingh@sirillp.com*

Catherine E. Ybarra (SBN # 283360)
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
Tel: (213) 297-3807
E: *cybarra@sirillp.com*

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**

Andrew Ready Tate*
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
Tel: (314) 669-3600
E: *atate@peifferwolf.com*

Melisa A. Rosadini-Knott
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010
Tel: (323) 982-4109
E: *mrosadini@peifferwolf.com*

Brandon M. Wise*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Tel: (314) 833-4825
E: *bwise@peifferwolf.com*

Wail Jihadi*
1701 Pennsylvania Ave. N.W., Suite 200
Washington, DC 20006
Tel: (202) 216-1541
E: *wjihadi@peifferwolf.com*

*Counsel for Plaintiffs and Interim Lead Class Counsel for the Proposed Class*

**Admitted pro hac vice*